UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HUFFMAN,<br><br>        Plaintiff,<br><br>        v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | No. CV 04-09571 (SS)<br><br>MEMORANDUM DECISION AND ORDER |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Supplemental Security Income. On December 10, 2005, the parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Defendant filed a Joint Stipulation on behalf of both parties on October 3, 2005. The Court has taken the Joint Stipulation under submission without oral argument. For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED.

**PROCEDURAL HISTORY**

On March 19, 2003, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Administrative Record ("AR") 54-56). He alleged that his disability began on January 1, 2002, due to an "enlarged heart, very high blood pressure, rapid heart beats," and cholesterol. (AR 54, 71). Plaintiff claimed that he stopped working on September 15, 2001, because his "boss did not want to take [him] back to chance" his having a heart attack on the job. (AR 71). The Agency denied Plaintiff's application on June 16, 2003 and again on September 18, 2003, the latter pursuant to Plaintiff's request for reconsideration. (AR 31-40).

Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 43). A hearing was held on June 15, 2004 before ALJ Ariel Sotolongo. (AR 199). Plaintiff was represented by counsel, and testified on his own behalf. (AR 199, 201-229). His wife, Anna Huffman, also testified. (AR 229-236). Additionally, a vocational expert ("VE") testified. (AR 244). On June 24, 2004, the ALJ issued a decision denying Plaintiff SSI benefits. (AR 26).

Plaintiff then sought review of the ALJ's decision before the Appeals Council. On September 22, 2004, the Appeals Council denied Plaintiff's request for review. (AR 9). On October 29, 2004, the Appeals Council set the first denial aside, pursuant to Plaintiff's request for review, to consider additional information. (AR 5). The Appeals Council again denied Plaintiff's claim, and the ALJ's decision

became the final decision of the Commissioner. (AR 5). Plaintiff and Defendant filed this Joint Stipulation on October 3, 2005. (Joint Stipulation ("JS") at 1).

## FACTUAL BACKGROUND

Plaintiff was born on March 2, 1962 and was forty-two years old at the time of the hearing. (AR 201). He did not complete his high school education, dropping out in the tenth grade. (AR 201). His past work experience includes employment as a welder, pipe fitter, boiler house mechanic, structural steel worker, amusement park worker and ride operator. (AR 20, 202, 203).

He currently lives in an apartment with his wife, Anna Huffman, and his two children. (AR 54, 207). He has an eighteen-year-old son and a fourteen-year-old daughter. (AR 207). They are currently supporting themselves on his wife's income alone. (AR 207). He alleges that his disability began on January 1, 2002, due to an "enlarged heart, very high blood pressure, rapid heart beats," and cholesterol. (AR 54, 71). Plaintiff is five feet, eight inches tall and weighs in excess of 335 pounds. (JS at 8).

Doctor Paul John Gallardo treated Plaintiff from September 2001 to February 2003. (AR 104-109, 119-128). Doctor Gallardo's medical diagnosis repeatedly included hypertension and obesity. (AR 104-109). During this period, Plaintiff's weight increased from 266 pounds to 323 pounds. (AR 104-109, 119-128).

Plaintiff was hospitalized for three days starting on January 22, 2002. (AR 109). He was admitted for "palpitations and shortness of breath and chest tightness radiating to the neck." (AR 110). A "coronary angiogram and ventriculography with pressure recordings" was performed and his discharge diagnosis was "supraventricular tachyrdia, hypertension - poorly controlled, obesity, hypercholesterolemia." (AR 110, 111). One month prior to this hospital stay, Plaintiff had experienced a "prolonged episode" of rapid heartbeat. (AR 113).

On May 28, 2003, Doctor Mark Borigini examined Plaintiff and concluded that "patient is able to stand and walk for 6 hours out of an 8-hour workday with appropriate breaks. He is able to bend and crouch, although he complains of lightheadedness when he does bend over. He is able to do fine and gross manipulation with his hands." (AR 166 - 169). He added, "I do not see any limitation to his lifting except for his general strength." (AR 169). A DDS assessment followed one month later, finding Plaintiff capable of heavy work with occasional climbing ladder/rope/scaffolds and stooping. (AR 172 - 179).

On March 2, 2004, Doctor John M. Hernandez treated Plaintiff. (AR 188). Among Doctor Hernandez's findings were that Plaintiff is "unable to work due to chest pains" and his limitations are "marked." (AR 190, 191). Further, Plaintiff can "walk a half city block without rest" and "can sit and stand continuously for no more than twenty minutes, respectively." (AR 191). Plaintiff's "legs should be elevated to chest level 6-8 hours out of 8 hour working day" and he cannot lift any weight. (AR 191).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

```
        (4)   Is the claimant capable of performing his past work?
              If so, the claimant is found not disabled.  If not,
              proceed to step five.
        (5)   Is the claimant able to do any other work?  If not,
              the claimant is found disabled.  If so, the claimant
              is found not disabled.
```

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b) - 404.1520(f)(1) & 416.920(b) - 416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

---

[2] Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process discussed above. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (AR 20). At step two, the ALJ concluded that Plaintiff's impairments resulting from his tachycardia, hypertension and obesity are severe. (AR 20). At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that were severe enough to meet or equal any of the impairments appearing in the "Listing of Impairments" set forth in Regulations 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20-21). At the fourth step, the ALJ found that Plaintiff is unable to perform any of his past relevant work and has no transferrable skills. (AR 25). At Step Five, the ALJ concluded that Plaintiff has the residual functional capacity to perform a significant range of medium work, including the ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently. (AR 25). The ALJ also concluded that Plaintiff can sit, stand and walk six hours in an eight-hour workday, can occasionally climb stairs and stoop with frequent other postural activities and should avoid heights and work hazards. (AR 25).

Based on Plaintiff's treatment record and the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national or regional economy, including the jobs of a hand packer and dining room attendant. (AR 25).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**DISCUSSION**

Plaintiff contends that the ALJ failed to properly consider the treating doctors' opinions. Plaintiff also contends that the ALJ failed to provide legally sufficient reasons for rejecting his subjective pain testimony. (JS at 4, 5, 16). The Court agrees with both contentions, and additionally finds that the ALJ failed to follow the required procedure for evaluating obesity as set forth in <u>Celaya v. Halter</u>, 332 F.3d 1177 (9th Cir. 2003).

**A.   The ALJ Failed To Give Proper Weight To The Treating Physicians Opinions**

Plaintiff contends that the ALJ failed to give proper weight to the treating physicians opinions. This Court agrees. The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. <u>Id.</u> "The AlJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." Embrey v. Bowen, 849 F.2d 418 (9th Cir. 1988) (citing Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The record contains the treating records of Doctors Hernandez and Gallardo. Dr. Hernandez began treating Plaintiff on March 2, 2004. (AR 188). Dr. Hernandez concluded that Plaintiff was unable to work due to his chest pain and other limitations. (See AR 189-193). The ALJ rejected Dr. Hernandez's opinion, choosing instead to rely on the findings of the examining and non-examining physicians because, according to the ALJ, Dr. Hernandez's opinion was "not supported by the overall medical evidence." (AR 23). However, "to say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." Embrey, 849 F.2d at 421. The ALJ's conclusory statement regarding Dr. Hernandez's opinion, without more, is not a sufficient basis to reject Dr. Hernandez's opinion.

The ALJ refers to the "extremely limited" residual functional capacity of Plaintiff offered by Dr. Hernandez, and states that if this assessment was correct, then "claimant could be expected to be in delicate health, with multiple hospital admissions and close monitoring." (AR 23). However, the evidence does show that Plaintiff was, in fact, in poor health. For example, Plaintiff was admitted to the hospital for three days. (AR 109). Further, Plaintiff regularly visited Dr. Gallardo, evidencing close monitoring. (AR 104-109, 119-

128).  Plaintiff's steadily increasing weight gain suggests his health was declining.  (AR 104-109, 119-128).

When rejecting a treating physician's opinion, "the ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors, are correct."  <u>Embrey</u>, 849 F.2d at 421, 422.  Although the ALJ has the discretion to resolve ambiguities in medical evidence, he cannot reject treating physicians opinions without stating specific and legitimate reasons, supported by substantial evidence in the record.  <u>Lester</u>, 81 F.3d at 830 (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983)).

Dr. Gallardo treated Plaintiff since September of 2001. (AR 104-109, 119-128).  In rejecting his medical opinion, the ALJ states that it is "likewise not persuasive for similar reasons, i.e., lack of objective findings."  (AR 23).  In support of this conclusion, the ALJ cites medical evidence that Plaintiff is "stable and that the chest pain and other related symptoms are not cardiac-related." (AR 23)  However, this conclusion is in conflict with specific medical evidence in the record.  (AR 144-151; 153-162).  It therefore does not constitute a "legitimate" reason.

The ALJ improperly rejected the opinions of both treating physicians.  He substituted his own medical judgment without specific and legitimate reasons for doing so.  This error requires remand.

**B.  The ALJ Failed to Give Clear and Convincing Reasons for Rejecting Claimant's Subjective Testimony**

Plaintiff argues that the ALJ also failed to provide legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony.  This Court agrees.

In assessing the credibility of a claimant's subjective complaints testimony, an ALJ must first apply the Cotton standard, which requires the claimant to produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain.  Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986)).  Objective medical evidence is required to establish the underlying impairment, but not the severity of the pain.  Id.

The ALJ must then assess the "credibility of claimant's testimony regarding the severity of symptoms." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  An ALJ "cannot be required to believe every allegation of disabling pain." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  However, an ALJ may not discredit the claimant solely because the degree of pain alleged is not supported by objective medical evidence.  Reddick, 157 F.3d at 722 (citing Bunnell, 947 F.2d at 346, 347).

The ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen, 80 F.3d at 1284.  "Unless there is affirmative evidence showing that the

claimant is malingering, the ALJ's reasons for rejecting pain testimony must be clear and convincing." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

In rejecting Plaintiff's credibility, the ALJ stated that "the claimant's testimony regarding his limitations was not credible, as it appears that they are self-imposed, perhaps as a result of unwarranted fear regarding his cardiac condition, rather than as a result of his impairment." (AR 22). Again, the ALJ failed to cite any reasons why he believes that Plaintiff's symptoms are "self-imposed" or a result of Plaintiff's "fear regarding his cardiac condition." This is not a clear and convincing reason to reject Plaintiff's testimony.

The ALJ does state that "[t]he medical evidence attests to no significant objective findings and conservative treatment, [and] thus, does not corroborate the claimant's allegations of extremely limited functional capacity." (AR 22). This reason, alone, however is insufficient to reject the Plaintiff's testimony.

As there is no evidence to support a finding that Plaintiff was malingering (and the ALJ failed to expressly make such a finding), the ALJ was required to provide "clear and convincing" reasons to reject his testimony. Because he failed to provide such reasons, remand is required.

### C. The ALJ Failed To Follow The Proper Procedures For Analyzing The Effects of Plaintiff's Obesity

Where there is evidence of obesity, the ALJ must determine the effect of the claimant's obesity upon his other impairments, his ability to work, and his general health. Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003); see also Social Security Ruling 02-01p (requiring an ALJ to consider the effects of obesity at several points in the five-step sequential evaluation).

At the time of the hearing, Plaintiff, who is five feet and eight inches tall, testified that he weighed 336 pounds. (AR 210). The ALJ noted that Plaintiff suffers from obesity. (AR 20, stating "the medical evidence indicates that claimant has tachycardia, hypertension and obesity"). However, the ALJ failed to analyze the effect of Plaintiff's obesity on Plaintiff's other impairments. This omission was error. Celaya, 332 F.3d at 1182; see also Barrett v. Barnhart, 355 F.3d 1065, 1068-69 (7th Cir. 2004) (ALJ erred in not considering effect of Plaintiff's obesity on claimant's arthritis); Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir. 2000) (evidence of obesity required ALJ to consider weight issue with the aggregate effect of claimant's other impairments). The ALJ must determine the effect of obesity on other impairments.

For this reason, remand is also appropriate. On remand, the ALJ shall consider the effect of Plaintiff's obesity on his other impairments, namely tachycardia and hypertension.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REMANDING the decision of the Commissioner and dismissing this action with prejudice. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 15, 2006

_____/s/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE